IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**ENTERED**

**JUL 2 6 2004**

PATSY S. CALLAHAN,     )
                         )
      Plaintiff,     )
                         )
v.                   )    Case No. CV-02-TMP-1674-S
                         )
THE UNITED STATES OF AMERICA,  )
                         )
      Defendant.     )

## MEMORANDUM OPINION

This action is before the court on the motion to dismiss or, in the alternative, for summary judgment filed April 16, 2004, by the defendant, Norman E. Mineta, Secretary of the United States Department of Transportation.[1] The motion was supported by a brief and an evidentiary submission. Plaintiff Patsy Callahan responded to the motion by filing a brief in opposition, supported by

---

[1]    The plaintiff originally named as defendants Mineta, as her employer, and William Hensley, an individual who worked as her supervisor. Hensley is accused of creating the hostile environment alleged in the complaint. Pursuant to defendants' earlier motion, Hensley was dismissed as a defendant. The Government subsequently filed a motion to substitute the United States for Mineta. By order dated September 2, 2003, the court stated that the motion for substitution would be granted unless plaintiff came forward with any reason the motion should not be granted. To date, plaintiff has not responded to that motion. Accordingly, the motion is GRANTED, and the United States is the sole defendant bringing the instant motion.



exhibits.   The defendant submitted a reply brief.   Both parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).   The motion has been fully briefed, and the court has considered all of the evidence and argument of both parties.   For the reasons set forth herein, the court finds that the defendant's motion for summary judgment is due to be granted in part and denied in part, and all of the the plaintiff's claims except the claim of retaliation are due to be dismissed with prejudice.

## I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).   The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is

3

no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient

4

evidence on which the jury could reasonably find for the plaintiff. <u>Anderson</u>, 477 U.S. at 254; <u>Cottle v. Storer Communication, Inc.</u>, 849 F.2d 570, 575 (11th Cir. 1988).   Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor.  <u>Anderson</u>, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.   <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  FACTS

Viewing the evidence in the light most favorable to the plaintiff, the following undisputed facts are relevant to the instant motion.

Callahan, a female over the age of 40,[2] has worked for the Federal Aviation Administration, an agency of the United States Government, since 1989.  She was hired in 1989 as an administrative assistant.  In 1991, she was promoted to the position of administrative officer.  She worked in the FAA's Alabama Flight Standards District Office, which was then located in office space

---

[2]   Callahan was 41 when she began working for the FAA. Prior to that employment, she was a federal employee working for the Federal Bureau of Investigation.

at or near the Birmingham International Airport.  Callahan was supervised from 1995-1999[3] by William Hensley, the office manager.

The complaint that commenced this action states in broad terms the following claims: that Callahan was subjected to a hostile environment based upon sexually derogatory comments and the FAA's failure to address her complaints about the comments (Count I); that Callahan was subjected to discriminatory treatment based on her age (Count II); that Callahan was subjected to discriminatory treatment based on her disability (Count III); that her employer retaliated against her because she complained about discriminatory treatment (Count IV); that her employer negligently retained Hensley in a supervisory position (Count V); and that the defendant's conduct constituted the tort of outrage under Alabama law (Count VI).  Callahan's attorney agreed in his response to the motion for summary judgment to voluntary dismissal of Callahan's claim based on a disability (Count III).  For all the reasons set forth in the court's order dated September 2, 2003, Callahan's state-law claims (Claims V and VI) are due to be dismissed based upon the Federal Tort Claims Act.[4]

---

[3]    Although the complaint does not specify the dates, Hensley's deposition indicates he worked in the Birmingham office only from 1995 until his retirement in May 1999.

[4]    Accordingly, the defendant's motion to dismiss (court document #21) is due to be and hereby is GRANTED, and plaintiff's state-law claims set forth in Counts V and VI are due to be and hereby are DISMISSED WITH PREJUDICE.

The complaint does not describe any of the conduct alleged to have been discriminatory on the basis of sex or age.  The court has not been provided with any deposition testimony of the plaintiff. The plaintiff has supplied a declaration[5] that describes the following acts:  On more than one occasion, Hensley told Callahan that he wanted "young, new, fresh blood" in the office, and that he wanted as an employee "someone who has not been around the block." When Hensley made those statements, Callahan felt he was threatening to fire her or trying to force her to quit.  Hensley described Callahan as "'dead wood' to the agency."  Hensley used coarse and profane language in Callahan's presence, which offended her.  Callahan felt very stressed because of Hensley, and became physically ill because of her work environment.

In January of 1998, Callahan telephoned an Equal Employment Opportunity Commission counselor to complain that she was being discriminated against on the basis of sex, age, and disability.[6]

---

[5]    The "declaration" apparently is signed by the plaintiff but is not notarized.

[6]    Callahan alleges that she has "a lack of acuity in visionary motor skills" caused by genetic factors and by retinal and cataract surgery.  She further alleges that she suffers from "Seasonal Affective Disorder," which can be alleviated by exposure to natural light.  The defendant argues that Callahan, as a federal employee, is not entitled to bring an action under the ADA, but should instead have sought relief under the Rehabilitation Act.  In any event, however, Callahan has conceded that her physical condition is not a "disability" protected under federal law and has withdrawn her claims based on disability.

7

In her telephone complaint, Callahan reported that Hensley's statement about "fresh blood" was discrimination based on age. She further reported that she suffered gender discrimination because she was the only female management employee, and the only management employee, who was not assigned an office with a window.[7]

Callahan filed a formal EEO complaint on or about March 24, 1998. In the formal complaint she additionally stated that she had been discriminated against in the handling of requests for annual leave, an alternate work schedule, compensatory time, and office space.[8] She stated that her manager, Hensley, had a "sarcastic, abusive, and demeaning" attitude towards her. She complained that during a conversation regarding a matter related to her duties "he did not once look at me." She complained that she had been denied

---

[7]     Callahan's complaint about the window formed the basis of both her sex claim and her disability claim. On May 24, 1999, however, plaintiff's counsel confirmed that Callahan had been given a window office. Accordingly, the disability claim based on the window office has been withdrawn, and the sex claim based on the window office is MOOT. The court further notes that there is no evidence in the record that would support plaintiff's claim that Hensley's motivation in denying her access to a window office was based on gender. To the contrary, it appears that Callahan first argued that she was entitled to a window office because she was a member of management. After defendant demonstrated that Callahan was not a management employee, Callahan instead argued that she was entitled to a window office because of her Seasonal Affective Disorder. She never made any substantive showing that she was denied a window office because of her gender.

[8]     The court presumes that the "office space" reference again refers to her assignment to a space other than a window office.

requests for compensatory time on five occasions, while other employees were allowed to obtain compensatory time. She complained that her requests for annual leave were not handled in a timely manner and that she was denied the ability to adopt an alternate work schedule.

Callahan alleges that she filed a second EEO complaint on July 14, 1998.[9] What Callahan refers to as a complaint is an informal note in which Callahan alleged that Hensley failed to forward to the regional office of the FAA a recommendation for a promotion that Callahan had prepared on her own behalf in June 1998. Callahan alleges that Hensley's failure to recommend Callahan for the promotion was in retaliation for her first EEO complaint.

On October 15, 1998, Hensley reported that Callahan's job performance was not adequate, and he required Callahan to enter the FAA's "Performance Improvement Program." Before that date, Hensley never had given Callahan any review that indicated her work was

---

[9] The complaint is a typewritten note that the plaintiff labeled by hand: "Earl EEO #2." It is dated July 14, 1998, but stamped "filed" by the EEOC on September 17, 1998. The EEOC ultimately determined that the complaint was not timely filed within 45 days of the date Callahan learned of the retaliatory act. The defendant now asserts that, because the plaintiff's EEO complaint was untimely, the retaliation claim is due to be dismissed for this reason. It appears that the plaintiff has presented a question of fact as to when she filed the retaliation complaint; accordingly, the court finds the motion for summary judgment is not due to be granted on grounds of the time-bar. As set forth herein, however, the claim is due to be dismissed for substantive reasons.

less than satisfactory.  On October 21, 1998, Callahan again complained to the EEO, this time alleging that Hensley's actions criticizing her job performance were in retaliation for her earlier complaints.

Early in 1999, the FAA conducted an investigation into complaints about the work environment in the office that Hensley managed.  Paul Bennett conducted that investigation, which resulted in a "negative finding" as to Hensley.  Bennett testified that the Birmingham office had an "extremely high and urgent" need for change in management, and that the work environment in the office was "very antagonistic and hostile."

Callahan filed the complaint commencing this action on July 2, 2002.  The defendants seek summary judgment on all of Callahan's claims, asserting that: (1) plaintiff has failed to sufficiently plead claims of sex or age discrimination; (2) the retaliation claim is due to be dismissed because the defendant has given a reason for her termination and that reason has not been shown to be a pretext.

### III. DISCUSSION

**A. Gender Claims**

In order to sustain a Title VII claim for harassment sufficient to create a hostile work environment, the plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she has been subjected to harassment based upon her gender or age; (3) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there exists a basis for holding the employer liable. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999). An employer is vicariously liable to a victimized employee where the hostile environment has been created by a supervisor "with immediate (or successively higher)" authority over the employee. Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 2275, 2292-93, 141 L. Ed. 2d 662, 689 (1998). It is undisputed that Hensley had supervisory authority over the plaintiff. The primary issue on which defendant's motion turns is whether the conduct was sufficiently severe or pervasive as to constitute violations of federal law.

The Eleventh Circuit Court of Appeals examined the "severe and pervasive" element of a Title VII sexual harassment claim in Gupta v. Florida Board of Regents, 212 F.3d 571 (11th Cir. 2000). The court in Gupta went on to note that the requirement is critical to

11

prevent the courts from turning ordinary socializing in the
workplace into discriminatory conduct. Id. at 583. Such ordinary
socializing was deemed to include the "sporadic use of abusive
language, gender-related jokes, and occasional teasing" as well as
horseplay and intersexual flirtation. Id. at 582, quoting
Faragher, 524 U.S. at 788.

Likewise, in Mendoza, the court of appeals explained:

Although Title VII's prohibition of sex discrimination
clearly includes sexual harassment, Title VII is not a
federal "civility code." Oncale v. Sundowner Offshore
Services, Inc., 523 U.S. 75, 118 S. Ct. 998, 1000-02, 140
L. Ed. 2d 201 (1998) ("We have never held that workplace
harassment, even harassment between men and women, is
automatically discrimination because of sex merely
because the words used have sexual content or
connotations."); Faragher v. City of Boca Raton, 524 U.S.
775, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) ("A
recurring point in these opinions is that 'simple
teasing,' offhand comments, and isolated incidents
(unless extremely serious) will not amount to
discriminatory changes in the 'terms and conditions of
employment.'" (internal citation omitted)); Meritor
[Savings Bank, FSB v. Vinson], 477 U.S. at 67, 106 S. Ct.
2399 ("Not all workplace conduct that may be described as
'harassment' affects a 'term, condition, or privilege' of
employment within the meaning of Title VII.").

Id. at 1245.

It is not enough for Callahan to show that Hensley's behavior
offended her; rather, she must show that the FAA office where she
worked was so permeated with discriminatory intimidation, ridicule,
and insult that a reasonable person would perceive the environment

12

as hostile or abusive.   See Meritor Savings Bank v. Vinson, 477

U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986).   In

determining if this critical element of a sexual harassment claim

has been met, the court must look to the frequency, severity, and

pervasiveness of the conduct complained of.   Again, the court of

appeals has said:

> The objective component of this analysis is somewhat fact
> intensive.   Nevertheless, the Supreme Court and this
> Court have identified the following four factors that
> should be considered in determining whether harassment
> objectively altered an employee's terms or conditions of
> employment: (1) the frequency of the conduct; (2) the
> severity of the conduct;(3) whether the conduct is
> physically threatening or humiliating, or a mere
> offensive utterance; and (4) whether the conduct
> unreasonably interferes with the employee's job
> performance.   Allen v. Tyson Foods, 121 F.3d 642, 647
> (11th Cir. 1997) (citing Harris, 510 U.S. at 23, 114 S.
> Ct. 367).   The courts should examine the conduct in
> context, not as isolated acts, and determine under the
> totality of the circumstances whether the harassing
> conduct is sufficiently severe or pervasive to alter the
> terms or conditions of the plaintiff's employment and
> create a hostile or abusive working environment.   Id.;
> see Harris, 510 U.S. at 23, 114 S. Ct. 367; Henson, 682
> F.2d at 904; Faragher, 118 S. Ct. at 2283 (citing Harris,
> 510 U.S. at 23, 114 S. Ct. 367, and explaining that "we
> directed courts to determine whether an environment is
> sufficiently hostile or abusive by 'looking at all the
> circumstances'").

Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999).

Moreover, it has been noted that Title VII may not be used as a

tool to punish "the ordinary tribulations of the workplace,"

<u>Faragher</u>, 524 U.S. at 788, or failure to treat a female employee with "sensitivity, tact and delicacy," <u>Minor v. Ivy Tech State College</u>, 174 F.3d 855, 858 (7th Cir. 1999).  The court is not permitted to police language in the workplace under the guise of enforcing Title VII.  The Eleventh Circuit Court of Appeals further has noted that the use of coarse or boorish language has been deemed "too commonplace" in our society to be classified as discriminatory.  <u>Gupta</u>, 212 F.3d at 585, quoting <u>Minor</u>, 174 F.3d at 858.

In this case, the only conduct of which Callahan complains that conceivably constitutes sexual harassment is that Hensley used profanity in her presence.  Callahan does not explain the frequency of the language, nor does she specify what type of profane language Hensley used.  Although Callahan professes that the language offended her, and thus that the conduct is subjectively actionable, she has failed to demonstrate that the conduct complained of rose to the level that a reasonable person would have perceived as hostile and abusive.  As stated in <u>Gupta</u>, this court has a duty to examine the defendant's conduct to determine whether it meets the "sufficiently severe or pervasive" requirement.  In this case, plaintiff has not described the nature of the language Hensley used, the situations in which he used it, or the frequency with which he used it.  Taking the plaintiff's allegations as true, and

viewing the totality of the circumstances, the court finds that the alleged harassment in this case - which has simply never been described - cannot be deemed to be conduct that a reasonable person would view as so severe or pervasive as to alter Callahan's working conditions and warrant redress.   Consequently, the defendant's motion for summary judgment is due to be granted as to plaintiff's Title VII claims based on gender.

### B. Age Claims

Plaintiff asserts a claim arising from the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* ("ADEA").   The ADEA prohibits an employer from discriminating against any individual "in terms of compensation, terms, conditions, or privileges of employment because of such individual's age."   29 U.S.C. § 623(a)(1).   In order to survive a motion for summary judgment, the plaintiff in an age discrimination case first must establish a *prima facie* case.   In order to establish the *prima facie* case of discrimination, a plaintiff may present to the court: (1) direct evidence that "discriminatory animus played a significant or substantial role in the employment decision," Eskra v. Provident Life and Accident Insurance Company, 125 F.3d 1406, 1411 (11th Cir. 1997), or (2) circumstantial evidence of discrimination, in accordance with the four-part test set forth in McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), or (3) statistical evidence of a pattern of discrimination. Zaben, 129 F.3d at 1457.

Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without requiring the factfinder to make any inferences or presumptions. Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989). When the plaintiff relies upon circumstantial evidence, rather than direct evidence, she creates a presumption of discrimination by establishing a prima facie case. The presumption may be rebutted, however, if the employer offers a legitimate, nondiscriminatory reason for the employment action. Once the nondiscriminatory reason is articulated, the burden shifts to the plaintiff to show that the reason is either not worthy of belief, or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proferred reason. Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331 (11th Cir. 1998) reh'g and reh'g en banc denied, 172 F.2d 884 (11th Cir. 1999), citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

Upon examination of the evidence presented in support of and in opposition to the motion for summary judgment, Callahan mentions

only three incidents related to her age.[10]   She complains that Hensley told her that he wanted "young, new, fresh blood" in the office and that he wanted an employee "who has not been around the block."  Hensley described Callahan as "'dead wood' to the agency." The three comments, even if made on more than one or two occasions over the four years Hensley supervised Callahan, are sporadic or offhand comments.

The Eleventh Circuit Court of Appeals has held that a supervisor's desire to hire "fresh young blood," even when coupled with a statement that it was "about time the older employees stepped aside" to allow younger employees to move up, were found to show, "at best, a general attitude disfavoring older employees." Minton v. American Bankers Ins. Group, 2003 WL 21303330 (11th Cir. Feb. 6, 2003).  Other courts in this circuit have examined similar comments about "young blood" and have deemed that they were not

_____

[10]   The court notes that it is not certain how, if at all, to categorize plaintiff's allegations made in an EEOC complaint, but never set forth in the complaint, about discrimination in the allowance of annual leave, compensatory time, and an alternate work schedule.  There is no evidence that any of the employer's conduct with respect to the work schedule was motivated by or related to the plaintiff's age or gender.  Even if such actions were related to age or sex, the court would be unable to find that the actions are "adverse employment actions" that may be the basis for a Title VII action because they do not "constitute a significant change in employment status such as hiring, firing, failing to promote, reassignment ... or a decision causing a significant change in benefits."  Burlington Industries Inc., v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998).

probative of discriminatory intent.  See, e.g., Dilla v. West, 4 F. Supp. 2d 1130, 1140 (M.D. Ala. 1998).  The statements were deemed insufficient as direct evidence of age discrimination to withstand a motion for summary judgment.

Like the similar comments made in Dilla and Minton, Hensley's remarks require an inference that, because Hensley wanted "young blood," he would terminate or refuse to promote older workers in order to make room for younger workers.  Because an inference is required, the evidence falls short of the direct evidence standard. At best, then, the statements may be viewed as circumstantial evidence of age discrimination.

Finally, Hensley's statements are ambiguous.  He may have been, and has testified that he was, merely expressing his desire to bring new ideas and fresh perspectives into the workplace.  If that is what the statement meant, then the statement is "untainted by unlawful age bias," and cannot constitute direct evidence of age discrimination under the Dilla analysis.  Finally, even if the comments can be construed as circumstantial evidence of discrimination, the comments were not so "severe or pervasive" as to constitute a hostile working condition for older employees under the Gupta analysis.  As with her gender-based claim, the plaintiff has failed to establish that her working environment was so

permeated with anti-age bias that a reasonable person would have perceived it as hostile or abusive.[11]

## C.  Retaliation

The plaintiff in a Title VII retaliation case must establish a *prima facie* case by showing: (1) that she engaged in protected conduct and (2) suffered an adverse employment action, that was (3) causally linked to the protected expression.  Taylor v. Runyon, 175 F.3d 861, 868 (11th Cir. 1999).  In addition, the plaintiff must show that her employer was aware of her participation in the protected activity when it took the adverse action.  Maniccia v. Brown, 171 F.3d 1364,1369 (11th Cir. 1999).  The plaintiff in a retaliation case under Title VII must show that there is some causal relation between the act of opposing discrimination and the adverse employment action.  Olmsted v. Taco Bell Corp., 141 F.3d

_____

[11]    The court notes that it is not clearly pled whether the plaintiff alleges that her damages from the alleged age discrimination were that she was forced to work in an environment hostile to those over 40, or whether she was damaged in that she was denied a promotion and was subjected to a disciplinary process, the "PIP."  As explained herein, the plaintiff has failed to demonstrate that the age discrimination was "severe or pervasive" or that it interfered with her ability to do her job. Accordingly, the claim fails on examination of the hostile environment.  By the same token, as explained *infra* in relation to her retaliation claim, if her damages are the failure to promote and discipline, the claim fails because the plaintiff has failed to show that the articulated, nondiscriminatory reason for the employer's conduct was a pretext.

1457, 1460 (11th Cir. 1998).  The causal link requirement is to be construed broadly, and the Eleventh Circuit Court of Appeals has stated that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."  Id. at 1460, quoting EEOC v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993).

In this case, Callahan has demonstrated that she engaged in a protected activity in that she filed EEOC charges on or about March 24, 1998, and July 14, 1998.  It is undisputed that Hensley was aware of her complaints.  Hensley declined to recommend Callahan for a promotion in June 1998, and subjected her to disciplinary action in October of 1988.  In deposition, Hensley did not recall any specific reason that he subjected Callahan to the PIP except to vaguely describe her work performance as inadequate.  Callahan disputes Hensley's assessment, and asserts that her work performance was not in any way inadequate.  After October of 1998, Hensley was required by the FAA to meet with a staff counselor, Paul Bennett.  Bennett investigated Hensley's management of the Birmingham office, found serious inadequacies in Hensley's dealings with female employees, and counseled Hensley about employee complaints related to his management style.

In this case, the timing of Hensley's actions, coupled with the plaintiff's denial of any deficiencies in her performance and

20

the fact that the FAA counseled Hensley about his conduct in managing female employees is sufficient evidence from which a jury could infer that the complaint and the subsequent discipline are not completely unrelated.

Because the defendant has offered a nondiscriminatory reason for Callahan's discipline and for its failure to promote her in 1998, to overcome the motion for summary judgment Callahan must demonstrate by competent, admissible evidence that the defendant's nondiscriminatory reason is merely a pretext for retaliation against her.  In this case, the defendant's only nondiscriminatory reason for its actions is a generalization that Callahan's work performance was inadequate.  There is no documentation to describe the inadequacies, and no evidence that describes any specific manner in which Callahan failed to perform her job as well or better than she had for the many years before she filed an EEOC complaint, during which her work was adequate.  It is undisputed that Callahan's job performance had never been criticized before she filed the complaint.  The court should determine whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's articulated reason for the adverse job action that it is "unworthy of credence."  Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)(citations omitted).  The court's job at

21

this junction is not to determine whether the plaintiff should prevail at trial, but simply to consider whether the evidence "presents a sufficient disagreement to require submission to a jury." <u>Combs</u>, 106 F.3d at 1526.  The court finds sufficient support for Callahan's argument that the reasons given for the actions were pretextual.  Consequently, the court finds that the defendant's motion for summary judgment on Callahan's claim of retaliation is due to be denied.


### IV.  CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion for summary judgment, this court determines that the motion for summary judgment is due to be granted in part and denied in part.

There are no genuine issues of material fact and the defendant is entitled to judgment as a matter of law as to plaintiff's Title VII claim of hostile environment (Count I) and her claim based on the ADEA (Count II).  Plaintiff concedes that her claim based on discrimination on account of a disability (Count III) is due to be dismissed.  As discussed supra, her state-law claims (Counts V and VI) also are due to be dismissed.  Consequently, the motion for

summary judgment is due to be granted as to Counts I, II, III, V, and VI, and those claims are due to be dismissed with prejudice.

As to plaintiff's claim that the defendant retaliated against her (Count IV), there exists a genuine issue of material fact and the motion for summary judgment as to that claim is due to be denied.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 26th day of July, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

23